BLACK, Lloyd, Appellant, No. 81–1646,

v.

BAYER, Ronald Jay, Esquire, Pelletreau, Charles L., Esquire, Hurd, Thomas, Esquire, Public Defender.

BARTEE, John H., Appellant, No. 81–1763,

v.

YANOFF, Michael, Esq., Rossanese, Maurino J., Esq., Yollin, Hubert D., Esq.

STOICA, Eugene, Appellant, No. 81–1926,

v.

STEWART, William P., Public Defender and Terry, Otis, Investigator.

Nos. 81–1646, 81–1763 and 81–1926.

United States Court of Appeals, Third Circuit.

Argued Nov. 30, 1981.

Decided Feb. 8, 1982.

Resubmitted under Third Circuit Rule 12(6), Jan. 7, 1982.

---

Virginia Kerr (argued, Philadelphia, Pa., for appellant Black, No. 81–1646.

Lloyd Black, pro se.

Anthony J. Veneri, Jr., Executive Director, Realistic Issues, Ass'n Independent Law Clinic, Institutional Attorney for Lloyd Black.

Susan M. Warnock (argued), LaBrum & Doak, Philadelphia, Pa., for appellant Bartee, No. 81–1763.

Jeffrey L. Pettit, (argued) Hepburn, Willcox, Hamilton & Putnam, Philadelphia, Pa., for appellant Stoica, No. 81–1926.

Ronald Jay Bayer [pro se], Bayer, Herman & Leizerowski.

Charles L. Pelletreau [pro se], Laveson & Torpey P. C.

Christopher C. Fallon, Jr. (argued), Cozen, Begier & O'Connor, Philadelphia, Pa., for appellees Hurd, Stewart and Terry.

Stephen A. Madva (argued), Gilbert F. Casellas, Montgomery, McCracken, Walker

& Rhoads, Philadelphia, Pa., for appellee Yanoff.

Timothy J. Galanaugh (argued), Edwin L. Scherlis, Margolis, Edelstein & Scherlis, Philadelphia, Pa., for appellee Rossanese.

Robert P. Corbin (argued), German, Gallagher & Murtagh, Philadelphia, Pa., for appellee Yollin.

Before ALDISERT, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In *Polk County v. Dodson*, —— U.S. ——, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), the Supreme Court held that a public defender does not act "under color of state law" for purposes of 42 U.S.C. § 1983 [1] when performing a lawyer's traditional function as counsel to an indigent defendant in a state criminal proceeding. Determining that the defender did not act under color of law, the Court did not meet the question of whether she enjoyed absolute or qualified immunity from civil liability.

The appeals before us stem from three separate actions brought by former state criminal court defendants against their lawyers and against an investigator employed by the Defender Association of Philadelphia County. In each case the district court rendered judgment for the defendants, and the plaintiffs have appealed. After oral argument, we reserved decision pending the Supreme Court's decision in *Polk County*. Counsel have submitted additional briefings on the effect of that decision on these appeals. We now affirm the judgments in No. 81–1646, *Black v. Bayer*, and No. 81–1763, *Bartee v. Yanoff*, both because the defendants did not act under color of law

under *Polk County* and because we deem them to be absolutely immune from civil liability under § 1983. In No. 81–1926, *Stoica v. Stewart*, we hold that the complaint cannot be dismissed pursuant to *Polk County* because appellant has alleged a conspiracy between his lawyer, the investigator, and the prosecuting attorney, thus converting the private conduct to state action under the teachings of *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). We conclude, however, that both the public defender and his investigator enjoy absolute immunity, reaffirming our decisions in *Waits v. McGowan*, 516 F.2d 203, 205–07 (3d Cir. 1975), and *Brown v. Joseph*, 463 F.2d 1046 (3d Cir. 1972), *cert. denied*, 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003 (1973). Accordingly, the judgments of the district courts will be affirmed in all respects.

### I.

Lloyd Black, appellant in No. 81–1646, having apparently stabbed a girl friend in the back with a pocket knife, was arrested and charged with simple and aggravated assault, reckless endangerment, and attempted murder. He was represented at a preliminary hearing by appellee Thomas Hurd, a public defender employed by the Defender Association of Philadelphia, a private organization that receives substantial funding from the Commonwealth of Pennsylvania and the City of Philadelphia.[2] Black thereafter represented himself until the fourth day of his trial, at which time the court appointed a private attorney, appellee Charles L. Pelletreau, to represent him. A second private attorney, appellee Ronald Jay Bayer, was appointed to rep-

---

1. 42 U.S.C. § 1983 provides:

     Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

2. The Pennsylvania Public Defender Act specifically excludes the County of Philadelphia from its requirements. Pa.Stat.Ann. tit. 16, § 9960.3 (Purdon Supp. 1981). The offices and facilities of the Defender Association are privately owned.

resent him at the sentencing proceeding.[3] He was sentenced to a term of five to ten years and is now an inmate at the State Correctional Institution at Graterford, Pennsylvania. Black brought this § 1983 action against Hurd, Pelletreau, and Bayer, charging a violation of his civil rights because of ineffective assistance of counsel. He demanded compensatory and punitive damages. Relying on *Waits v. McGowan* and *Brown v. Joseph*, which held public defenders immune in § 1983 actions, the district court dismissed the complaint as to Hurd as frivolous, pursuant to 28 U.S.C. § 1915(d). It dismissed the complaint as to Pelletreau and Bayer on the authority of *Thomas v. Howard*, 455 F.2d 228 (3d Cir. 1972) (per curiam), which teaches that no state action surrounds the activities of private counsel. Black now appears to recognize that *Polk County* compels affirmance of the judgment, but he suggests that *Polk* may permit § 1983 liability for the performance of "certain 'administrative and possibly investigative functions.'" Second Supplemental Brief for Appellant at 2 (quoting *Polk County*, —— U.S. at ——, 102 S.Ct. at 453, 70 L.Ed.2d 509 (1981). He argues also that public defenders and court-appointed counsel do not enjoy absolute immunity from liability under § 1983.

## II.

John H. Bartee, appellant in No. 81–1763, was convicted in state court of robbery, theft, assault, and weapons offenses. He was represented during the criminal proceedings by appellees Michael Yanoff, Maurino J. Rossanese, and Hubert D. Yollin. He first retained private attorney Yanoff for representation at his preliminary hearing. One day before his trial, Bartee advised the state court that he would not be represented by privately retained counsel; and the court then appointed appellee Rossanese, a member of the Public Defender's Office of Montgomery County. Rossanese defended Bartee at trial. Following his convictions, Bartee advised Rossanese that he planned to seek post-conviction relief on grounds of ineffective assistance of counsel. The court permitted Rossanese to withdraw and appointed appellee Yollin, a private attorney not affiliated with the County Public Defender's Office, to represent Bartee in post-trial proceedings. Yollin was paid by the County pursuant to § 7 of the Pennsylvania Public Defender Act, tit. 16 Pa.Stat. Ann. § 9960.7 (Purdon Supp. 1981).

Bartee, who is presently incarcerated at Graterford, filed a complaint in the district court seeking damages under 42 U.S.C. §§ 1983, 1985(2) and (3), 1986, and 1988, and under the fifth and fourteenth amendments to the Constitution. He also requested the court to invoke the doctrine of pendent jurisdiction to consider his malpractice claim against Yanoff under state law. The district court dismissed the complaint as to Rossanese and Yollin on the authority of *Ross v. Meagan*, 638 F.2d 646 (3d Cir. 1981) (per curiam), *Waits v. McGowan*, and *Brown v. Joseph*. It also refused to hear the state claims against Yanoff, explaining that when all federal claims are dismissed before trial any pendent state claims should also be dismissed, *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976), and in addition that "'[i]f the new party sought to be joined is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim.'" *Bartee v. Yanoff*, 514 F.Supp. 96, 99 (E.D.Pa.1981) (quoting *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976)). On appeal, Bartee presses only the § 1983 claim and the pendent jurisdiction issue.[4]

---

**3.** The appeal was argued under the stipulation that Pelletreau and Bayer were private lawyers appointed by the court. Supplemental Brief for Appellant at 2 n.1.

**4.** The district court rejected the claim based directly on the Constitution, *see Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 21 L.Ed.2d 619 (1971), and held that § 1983 is the exclusive remedy for constitutional violations committed under color

## III.

Eugene Stoica, appellant in No. 81–1926, was charged with a sex crime in the state court. The court appointed appellee William P. Stewart, a staff lawyer of the Defender Association of Philadelphia County, to represent him at trial. During the course of his representation, Stewart utilized appellee Otis Terry, an investigator employed by the Defender. Association, to assist in the preparation of Stoica's defense. Stoica was convicted and is now incarcerated in the state correctional institution at Dallas, Pennsylvania. He filed a § 1983 complaint against Stewart and Terry alleging incompetency of representation and conspiracy with the prosecutor to suppress evidence of his innocence. The district court granted the defendants' motion to dismiss, relying on *Waits v. McGowan* and *Brown v. Joseph.* On appeal Stoica argues that public defenders and their investigators should not be absolutely immune from liability for damages under § 1983. He argues also that *Polk County* does not compel affirmance because private actors Stewart and Terry allegedly conspired with an immune state actor, the prosecuting attorney, thus converting their private conduct into state action under *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).

## IV.

When the issue of public defender liability in a § 1983 action first arose in *Brown v. Joseph,* 463 F.2d 1046 (3d Cir. 1972), *cert. denied,* 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003 (1973), this court was confronted with an appeal from the determination by then District Judge Joseph F. Weis, Jr., that in the exercise of his function as a lawyer, a public defender does not act under color of state law. We recognized the merit of Judge Weis' analysis, but opted for a different rationale to affirm the judgment:

Concededly, there are differences between a court-appointed lawyer from a pool of volunteers . . . or from an agency funded by private contributions . . . and one serving full time in a public office paid by public revenues authorized and mandated by statute.

But the fact that one comes to his court-appointed role as a result of a state-mandated and county-financed system does not, in any respect whatsoever, distinguish his professional responsibility to his client from that of any attorney appointed to serve without pay, or paid by a legal aid society financed largely by private contributions. We find it difficult to perceive "color of law" in the activities in the first category, and deny its existence in the latter. In any event, we do not deem it necessary to decide the question . . . because in the view we take, even assuming the color of law requirement to have been met, we hold that a County Public Defender, created under the Pennsylvania statute, enjoys immunity from liability.

463 F.2d at 1048.

The passage of ten years has now demonstrated the wisdom of Judge Weis' original approach, for in *Polk County v. Dodson* the Supreme Court accepted precisely Judge Weis' theory that in the exercise of his functions as a lawyer the public defender does not act under color of state law:

Within the context of our legal system, the duties of a defense lawyer are those of a personal counselor and advocate. It is often said that lawyers are "officers of the court." But the courts of appeals are agreed that a lawyer representing a client is not, by virtue of being an officer of the court, a state actor "under color of state law" within the meaning of § 1983.

---

of state law. It also determined that claims under 42 U.S.C. § 1985(2) and (3) would not lie because plaintiff did not allege a conspiracy, and further that

[N]either § 1986 nor § 1988 creates an independent cause of action. Section 1986 claims are derived from § 1985 claims so

that plaintiff's § 1986 claim would fail with his § 1985 claim. Section 1988 is a procedural provision and also creates no remedies in addition to those available under the substantive provisions of the Civil Rights Act. *Bartee v. Yanoff,* 514 F.Supp. at 97 n.2.

In our system a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interests of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

—— U.S. at ——, 102 S.Ct. at 450 (footnotes omitted). Based on this reasoning the Court held:

With respect to [plaintiff's] § 1983 claims against [the public defender], we decide only that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding. Because it was based on such activities, the complaint against [the public defender] must be dismissed.

*Id.* at ——, 102 S.Ct. at 453 (footnotes omitted).

### V.

■ We now consider the effect of the *Polk County* decision on these appeals. Appellants Black and Bartee appear to recognize that *Polk County* compels affirmance of the judgments dismissing their claims against public defenders Hurd and Rossanese.[5] We agree.

### VI.

■ We turn next to the liability of privately-retained counsel (appellee Yanoff in No. 81–1763) and private attorneys serving under court appointment and paid by the state (appellees Pelletreau and Bayer in No. 81–1646, and appellee Yollin in No. 81–1763). We hold that the reasoning of *Polk County* applies *a fortiori* and thus reaffirm a long line of decisions of this court recog-

nizing that private attorneys do not act under color of state law for purposes of § 1983. *See, e.g., Henderson v. Fisher,* 631 F.2d 1115, 1119 (3d Cir. 1980) (per curiam); *Steward v. Meeker,* 459 F.2d 669 (3d Cir. 1972) (per curiam); *Thomas v. Howard,* 455 F.2d 228 (3d Cir. 1972) (per curiam); *see also Pugliano v. Staziak,* 231 F.Supp. 347, 351 & n.5 (W.D.Pa.1964), *aff'd per curiam,* 345 F.2d 797 (3d Cir. 1965). Almost thirty years ago Judge Maris expressed views which have long since been crystallized as the controlling precept of this court, and which now have been endorsed by the Supreme Court in *Polk County:*

When counsel is retained by a defendant to represent him in a criminal case he acts in no sense as an officer of the state. For while he is an officer of the court his allegiance is to his client whose interests are ordinarily diametrically opposed to those of the state.

*United States ex rel. Darcy v. Handy,* 203 F.2d 407, 426 (3d Cir.) (in banc), *cert. denied,* 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375 (1953).

Appellants argue that court-appointed counsel should be required to meet the test of qualified immunity. In the approach we take, we find no color of state law attached to the functions of court-appointed counsel; nevertheless, we have considered and reject appellants' contention urging that we approach this case from the standpoint of qualified immunity.

### A.

To understand the current teachings of the Supreme Court relating to lawyers on both sides of the counsel table in state criminal cases who later find themselves as defendants in federal § 1983 cases, it is helpful to review briefly the development of relevant precepts. The Court has demonstrated much agility in weaving back and forth among concepts of constitutional deprivation, statutory construction, and state tort liability. Although students of juris-

---

**5.** Although the reasoning of *Polk County* was not utilized by the district courts, we may use a different rationale to affirm their judgments.

*Rhoads v. Ford Motor Co.,* 514 F.2d 931, 934 (3d Cir. 1975); *see Brown v. Joseph,* 463 F.2d at 1048.

prudence may shudder at the promiscuous mingling of federal constitutional protection notions—derived from the text of a written federal Constitution—with precepts of tort liability—generally the product of evolving state court decisions strongly influenced by the American Law Institute's Restatement of the Law—it will serve no useful purpose at this late hour for an inferior court to enter the lists on this formidable issue. The Supreme Court has spoken. The Court has cited no authority for generously mixing tort and constitutional law in interpreting § 1983, but it has stated its position vigorously and repeatedly. The phenomenon began with Justice Douglas' flat statement in *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 483, 5 L.Ed.2d 492 (1961), that § 1983 "should be read against the background of tort liability . . . ." By 1976 the Court had concluded "that § 1983 is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976). *Imbler* held that the same considerations of public policy that underlie the common law rule of absolute immunity of prosecutors from suits in tort for malicious prosecution likewise dictate absolute immunity under § 1983. Freely using tort analogies, the Court had previously extended absolute immunity to judges for acts committed within their judicial jurisdictions, *Pierson v. Ray*, 386 U.S. 547, 554–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 188 (1967), reaffirmed in *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); and qualified immunity to state governors and other executive officials, *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and to school officials, *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

Although it has been suggested that the absolute immunity accorded state prosecutors by the Supreme Court in *Imbler v. Pachtman*, and previously by this court in *Bauers v. Heisel*, 361 F.2d 581 (3d Cir. 1966) (in banc), *cert. denied*, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967), should be extended by analogy to defense counsel serving by court appointment, the Supreme Court in *Ferri v. Ackerman*, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979), thought otherwise in the context of a state malpractice claim:

In a sense, a lawyer who is appointed to represent an indigent defendant in a federal judicial proceeding is also a federal officer. Since other federal officers— the judge, the prosecutor, and the grand jurors—enjoy immunity by virtue of their office, arguably that immunity should be shared by appointed counsel. There is, however, a marked difference between the nature of counsel's responsibilities and those of other officers of the court. As public servants, the prosecutor and the judge represent the interest of society as a whole. The conduct of their official duties may adversely affect a wide variety of different individuals, each of whom may be a potential source of future controversy. The societal interest in providing such public officials with the maximum ability to deal fearlessly and impartially with the public at large has long been recognized as an acceptable justification for official immunity. The point of immunity for such officials is to forestall an atmosphere of intimidation that would conflict with their resolve to perform their designated functions in a principled fashion.

In contrast, the primary office performed by appointed counsel parallels the office of privately retained counsel. Although it is true that appointed counsel serves pursuant to statutory authorization and in furtherance of the federal interest in insuring effective representation of criminal defendants, his duty is not to the public at large, except in that general way. His principal responsibility is to serve the undivided interests of his client.

*Id.* at 202–04, 100 S.Ct. at 408–09 (footnotes omitted). The Court explained that "respondent has not directed our attention to any empirical data—in judicial decisions, legislative hearings, or scholarly studies—to support his conclusions that the risk of mal-

practice litigation deters members of the private bar from accepting the representation of indigent defendants...." *Id.* at 201 n.17, 100 S.Ct. at 407.

Appellants point to *Ferri* as providing support for their argument that only a qualified immunity should be extended to court-appointed defense counsel who have subsequently been sued under § 1983 by their former clients.[6] We now address this contention.

### B.

■ In the context of § 1983 litigation, the qualified immunity defense requires the defendant to prove "the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good faith belief." *Scheuer v. Rhodes,* 416 U.S. at 247–48, 94 S.Ct. at 1692; *see also Wood v. Strickland,* 420 U.S. at 322, 95 S.Ct. at 1001. We note also that the qualified immunity doctrine has been fashioned under circumstances in which the defendant is a public official. Moreover, the defense cannot be successfully asserted under Rule 12(b)(6), Fed.R.Civ.P.;[7] the defendant is required to develop it by means of skillfully prepared affidavits or depositions in a summary judgment proceeding under Rule 56, Fed.R.Civ.P., *see Maiorana v. MacDonald,* 596 F.2d 1072 (1st Cir. 1979);[8] or if the factual representations are properly controverted, qualified immunity must be established as a defense by evidence presented at trial. *See Skehan v. Board of Trustees of Bloomsburg State College,* 538 F.2d 53, 61–62 (3d Cir.) (in banc), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976). Whether the defense be asserted by motion for summary judgment or at a trial, representation by skillful counsel is an absolute requirement. It is one thing to place the burden of obtaining such counsel on governors, school board members, and state university officials and other holders of state public office. They can summon, without cost to them, the publicly financed legal departments of the state, county, school board or municipality to represent them at summary judgment or trial. But the very important question arises: where will court-appointed private counsel find an attorney to represent him or her in the defense of a subsequent § 1983 action? As a matter of public policy, should we say that one who accepts a court appointment to represent an indigent should also be expected to dig into his or her pocket to pay for the costs of defending a subsequent law suit? We do not think so.

■ Not presented to the Supreme Court in *Ferri* was the specific inquiry that we addressed at oral argument in these appeals to the exceptionally able counsel for the

---

**6.** Appellants recognize that *Ferri* does not directly control this case, because *Ferri* involved a state malpractice action while this case arose under the federal Civil Rights Act of 1871. "[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law." *Ferri,* 444 U.S. at 198, 100 S.Ct. at 406. On the other hand, "[w]hen federal law is the source of the plaintiff's claim, there is a federal interest in defining the defenses to that claim, including the defense of immunity." *Id.* at n.13, 100 S.Ct. at 406.

**7.** Rule 12(b)(6) permits a defense by motion to dismiss for failure of the pleading to state a claim upon which relief can be granted.

**8.** We are well aware ... that cases like this one in which state of mind is at issue do not usually lend themselves to summary judgment....

Nevertheless, we cannot ignore the Supreme Court's clear statement that government officials raising immunity defenses to damage suits may properly be awarded summary judgment. In recognized qualified immunity for most federal officials, the Court recently said:

[D]amage suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity. See [*Scheuer v. Rhodes*] 416 U.S., at 250 [94 S.Ct., at 1693]. In responding to such a motion, plaintiffs may not play dog in the manger; and firm application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits.

*Maiorana v. MacDonald,* 596 F.2d at 1076–77 (quoting *Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895 (1978)).

various appellants, who had argued that only qualified immunity be afforded court-appointed counsel in § 1983 actions:

> In the exercise of sound professional judgment, if consulted by another lawyer called upon to represent an indigent in a criminal proceeding—knowing that if later sued under § 1983, that court-appointed lawyer would have to retain private counsel to defend at summary judgment or at trial to produce evidence of good faith—would you advise that lawyer to take the appointment?

We believe that this is the more realistic question in determining whether society's effort to furnish counsel to indigents would be threatened by exposing court-appointed counsel to liability in § 1983 actions at the hands of disgruntled criminal defendants. We believe that the better test implicates more a knowledge of the relevant law and actual pre-trial and trial dynamics than a reliance on empirical data. We do not intend any criticism of the Supreme Court's emphasis on the absence of empirical data in *Ferri*, other than to suggest that such data would be hard to come by, because we know of no appellate opinion prior to *Ferri* intimating that a court-appointed lawyer could be held liable in damages under any theory.[9] We believe, however, that the more realistic public policy considerations will be revealed by framing the issue in terms of the professional advice a well-informed lawyer would render if consulted by another lawyer considering placing his or her name on the roster of court appoint-ments. We should not forget as judges what we know as lawyers,[10] and as lawyers we know that exposing court-appointed counsel to liability under § 1983 would deter many qualified, competent lawyers from accepting court appointments in criminal cases. We therefore hold that court-appointed counsel are absolutely immune from civil liability under § 1983.

### C.

For the foregoing reasons, therefore, we affirm the judgments at Nos. 81–1646 and 81–1763.[11]

### VII.

We now turn to No. 81–1926, *Stoica v. Stewart*, involving an action against an attorney and an investigator employed by the Defender Association of Philadelphia. The holding and the reasoning of *Polk County* ordinarily would compel us to hold that neither attorney Stewart nor investigator Terry acted under color of law within the meaning of § 1983. The Court in *Polk County* looked to the public defender's function, and not her employment relationship with the state, in holding that she was not a state actor. Under this functional approach, the investigator—equally with the attorney to whom he reports—cannot be considered a state actor. The functions of an investigator for the public defender, unlike an investigator for the state, are performed on behalf of an individual opposed by the state in adversary litigation.

---

9. Indeed, we know of only one appellate decision before *Ferri* permitting a public defender to be held liable based on his performance in a criminal case. *Spring v. Constantino*, 168 Conn. 563, 362 A.2d 871 (1975).

10. "When pressed with the question of where a judge is to get the social data he needs for instrumentally sound decisions, Judge Cardozo had only this answer: '[H]e must get his knowledge ... from experience and study and reflection; in brief, from life itself.'" Jones, *An Invitation to Jurisprudence*, 74 Colum.L. Rev. 1023, 1043 (1974) (quoting B. Cardozo, The Nature of the Judicial Process 113 (1921)).

11. We will not disturb the district court's decision to decline pendent jurisdiction over the state claim asserted by appellant Bartee against private practitioner Yanoff. Absent valid federal claims against co-defendants Rossanese and Yollin, or against Yanoff himself, we are persuaded that the court properly applied the teachings of *Aldinger v. Howard*, 471 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976), and *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976). In the appeal at No. 81–1646, we need not address appellant Black's suggestion that certain administrative or investigative functions of public defenders are performed under color of law, because Black's complaint does not allege that he has suffered harm from the performance of such functions. *Compare Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

The defense investigator in our adversary system assists defense counsel in "oppos[ing] the designated representatives of the State." *Polk County*, —— U.S. at ——, 102 S.Ct. at 450. The system "posits that a defense lawyer [and his investigator] best serv[e] the public, not by acting on behalf of the State or in concert with it, but rather by advancing 'the undivided interests of [their] client.'" *Id.* at ——, 102 S.Ct. at 450 (quoting *Ferri v. Ackerman*, 444 U.S. 193, 204, 100 S.Ct. 402, 409, 62 L.Ed.2d 355 (1979)). The investigator thus advances the interests of the defendant against those of the state, performing "a private function . . . for which state office and authority are not needed." *Id.* We therefore hold, guided by *Polk County*, that an investigator acting at the instance of a public defender does not act under color of law for purposes of § 1983.

█ This case presents an exception, however, to the rule of *Polk County*. Stoica's complaint alleges that attorney Stewart and investigator Terry conspired with the prosecutor to suppress evidence of his innocence. It is now settled that private persons who willfully participate in joint action with a state official act under color of law within the meaning of § 1983, notwithstanding the official's immunity from civil liability. *See Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). We therefore hold that the complaint was not subject to dismissal under the reasoning of *Polk County*, because it averred a conspiracy with a state official, the state prosecutor. Accordingly, we must address the issue of immunity from liability which formed the basis of the decision below.

### A.

The Supreme Court has yet to consider the issue, but this court and other federal courts of appeals have consistently held that public defenders enjoy absolute immunity from civil liability under § 1983. *See Ross v. Meagan*, 638 F.2d 646, 648–49 (3d Cir. 1981) (per curiam); *Robinson v. Bergstrom*, 579 F.2d 401, 408–11 (7th Cir. 1978) (per curiam); *Miller v. Barilla*, 549 F.2d 648 (9th Cir. 1977); *Minns v. Paul*, 542 F.2d 899 (4th Cir. 1976), *cert. denied*, 429 U.S. 1102, 97 S.Ct. 1127, 51 L.Ed.2d 552 (1977);[12] *Waits v. McGowan*, 516 F.2d 203, 205 (3d Cir. 1975); *Brown v. Joseph*, 463 F.2d 1046 (3d Cir. 1972), *cert. denied*, 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003 (1973). *See also Housand v. Heiman*, 594 F.2d 923, 925 (2d Cir. 1979) (per curiam). *But see Dodson v. Polk County*, 628 F.2d 1104, 1106–08 (8th Cir. 1980), *rev'd on other grounds*, —— U.S. ——, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), which recognized only a qualified immunity. Appellant Stoica now asks us to re-examine our prior holdings in light of *Ferri v. Ackerman*, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979), which held that federal law does not pre-empt a state's freedom to impose malpractice liability on an attorney appointed to represent a federal criminal defendant under the Criminal Justice Act of 1964, 18 U.S.C. § 3006A.

### B.

We have previously expressed what experienced lawyers know in "a frank endeavor to secure for the human factor in experience the central place which belongs to it in our whole scheme of thought and action":[13]

To subject this defense counsel to liability, while cloaking with immunity his counterpart across the counsel table, the clerk of the court recording the minutes, the presiding judge, and counsel of a codefendant, privately retained or court-appointed, would be to discourage recruit-

---

**12.** We recognize that the fourth circuit has recently expressed its view in *dictum* that *Ferri v. Ackerman*, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979), "cast[s] serious doubt on the continued vitality of the *Minns* immunity doctrine." *Hall v. Quillen*, 631 F.2d 1154, 1155 (4th Cir. 1981). For the reasons set forth in the text and in note 6, *supra*, we believe that the holding of *Minns v. Paul* and similar cases does survive *Ferri*, and we believe also that the policy considerations expressed in *Minns* retain their importance and their vitality today.

**13.** Small, *The Meaning of Sociology*, 14 Am.J. Soc. 13 (quoted in Pound, *Mechanical Jurisprudence*, 8 Colum.L.Rev. 605, 609 (1908)).

ment of sensitive and thoughtful members of the bar. Complaints under the Civil Rights Act, like the one at bar, are usually *pro se.* These receive special treatment, favorable to plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594 [595] 30 L.Ed.2d 652 (1972). Except where patently frivolous, they may be filed without the payment of a filing fee by indigents. Unlike complaints sounding in common law or statutory tort, public policy dictates that they be broadly interpreted in favor of inclusion, rather than exclusion. *Valle v. Stengel,* 176 F.2d 697, 702 (3d Cir. 1949). To deny immunity to the Public Defender and expose him to this potential liability would not only discourage recruitment, but could conceivably encourage many experienced public defenders to reconsider present positions.

*Brown v. Joseph,* 463 F.2d at 1049.

In addition to the problems of recruitment of qualified personnel, we believe that exposing public defenders to § 1983 liability—even with recognition of a qualified immunity—would interfere with the speedy and efficient performance of the defender's function. Public defenders are typically required to cope with extremely heavy caseloads demanding "the full exercise of professionalism, i.e., the unfettered discretion, in the light of their training and experience, to decline to press the frivolous, to assign priorities between indigent litigants, and to make strategic decisions with regard to a single litigant as to how best his interests may be advanced." *Minns v. Paul,* 542 F.2d at 901. The interests of the defender's indigent clients, as well as the public interest in vigorous and competent representation of criminal defendants, compel us to create as wide a space as possible for the

exercise of independent professional judgment on the part of the public defender:

> Unless immunity is absolute, [a public defender] would not be totally free to exercise his best judgment in representing his client because he would be constrained to weigh every decision in terms of potential liability. The resentment of unsuccessful litigants may easily blossom into § 1983 litigation, and defense of even frivolous § 1983 suits would consume the energy of state-subsidized attorneys which should be devoted to representing the interests of other indigent clients.

*Id.* at 902. As we recognized in *Brown v. Joseph,* "if a civil rights suit from unsatisfied clients is a constant threat to the Attorney involved, then there would be a chilling effect upon Defense Counsel's tactics. Defense Counsel would be caught in an intrinsic conflict of protecting himself and representing his client." 463 F.2d at 1049.

We note, moreover, that the Supreme Court in *Polk County v. Dodson* has now voiced its recognition of the important policy considerations that have led lower courts to grant absolute immunity to public defenders. Instead of relying on analogies from tort law, the Court in *Polk County* seemed to recognize the influence of the German legal philosopher Rudolph von Jhering, who taught that courts should ask first of all, how will a rule or decision work in practice? [14] We see this recognition in the Court's reference to confidence in our adversary system. It did not seek to rely on empirical data in *Polk County* as it had suggested in *Ferri,* but instead focused on the realities of the criminal justice system known to all judges and lawyers experienced in those courts:

14. R. von Jhering, *Der Zweck im Recht* (Law as Means to an End) (1904). As expressed by Professor Harry W. Jones:

> Law is not a form of art for art's sake; its ends-in-view are social, nothing more and nothing less than the establishment and maintenance of a social environment in which the quality of human life can be spirited, improving and unimpaired. Law serves these ends-in-view when—and to the extent

> that—its legislators, judges, practicing lawyers, and other decision-makers reach their judgments by way of a disinterested and informed evaluation of the probable consequences of their action, one way or the other, on the prevailing quality of human life in society.

Jones, *An Invitation to Jurisprudence,* 74 Colum.L.Rev. 1023, 1025 (1974).

Our adversary system functions best when a lawyer enjoys the wholehearted confidence of his client. But confidence will not be improved by creating a disincentive for the States to provide post-conviction assistance to indigent prisoners. To impose § 1983 liability for a lawyer's performance of traditional functions as counsel to a criminal defendant would have precisely that effect.

*Polk County v. Dodson,* —— U.S. at —— n.17, 102 S.Ct. at 453.

## C.

Our belief that public defenders should be granted absolute immunity from liability under § 1983 is reinforced by our recognition that the indigent defendant who believes he has been wronged will not be left without a remedy, nor will public defenders lack adequate incentives to perform competently and in good faith. Under Pennsylvania law, a criminal defendant can present a claim of ineffective assistance by a motion for a new trial, on direct appeal, or by post-conviction proceedings, and he may have a different counsel appointed to assert that allegation. He also "retains the right to initiate state and federal habeas corpus proceedings. For an innocent prisoner wrongly incarcerated as the result of ineffective or malicious counsel, this normally is the most important form of judicial relief." *Polk County,* —— U.S. at —— n.18, 102 S.Ct. at 453. Finally, as long as Pennsylvania adheres to its current precedent, he may seek redress under a state malpractice theory without the necessity of crossing the "color of law" barrier to § 1983 claims in the federal courts. *Reese v. Danforth,* 486 Pa. 479, 406 A.2d 735 (1979); *see Ferri v. Ackerman.* The public defender likewise is not without incentives to perform capably in the interests of his client. Canon 7 of the present A.B.A. Code of Professional Responsibility, implemented by Disciplinary Rules, requires all attorneys to represent their clients zealously within the bounds of the law; and Rules 1.1 (Competence) and 1.3 (Diligence) of the Draft Model Rules of Professional Conduct impose similar obligations. We are confident that state disciplinary committees are capable of enforcing these standards in response to complaints brought by indigent defendants against public defenders. Moreover, criminal prosecutions under 18 U.S.C. § 242 are a potential sanction for willful conduct resulting in the deprivation of constitutional rights. *See Polk County,* —— U.S. at —— n.19, 102 S.Ct. at 453 n.19.

We therefore reaffirm, based on our reexamination of prior decisions in this and other courts in light of the Supreme Court's recent decisions in *Polk County* and *Ferri v. Ackerman,* the longstanding rule in this circuit: public defenders and court-appointed counsel acting within the scope of their professional duties are absolutely immune from civil liability under § 1983.

## VIII.

We are finally brought to the question of appellee Otis Terry, who is not a lawyer, but an investigator for the Defender Association of Philadelphia County who assisted Attorney Stewart in the defense of appellant Stoica. There may be a superficial appeal to the notion that a defense investigator does not enjoy the same protection as a defense lawyer in an action brought under § 1983. The argument is made that at least in the context of prosecutorial immunity, the law distinguishes between the prosecutor's role as an advocate and his role as an investigator or administrator. *See Imbler v. Pachtman,* 424 U.S. 409, 430–31 & n.33, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); *Mancini v. Lester,* 630 F.2d 990 (3d Cir. 1980); *Forsyth v. Kleindienst,* 599 F.2d 1203 (3d Cir. 1979), *cert. denied,* —— U.S. ——, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). We have held, however, that absolute immunity protects a prosecutor in the performance of investigative functions to the extent that the investigation is "intimately associated with the judicial phase of the criminal process." *Ross v. Meagan,* 638 F.2d at 648. "[T]o the extent that the securing of information is necessary to a prosecutor's decision to initiate a criminal prosecution, it is encompassed within the protected, quasi-judicial immunity afforded

to the decision itself." *Forsyth*, 599 F.2d at 1215. Anticipating the dichotomy recognized in *Imbler v. Pachtman*, and the reasoning of *Forsyth* and *Ross*, we held in *Waits v. McGowan*, 516 F.2d at 206, "that where the function of an attorney's employee and the judicial process are closely allied, immunity will be granted, whereas if such function is not directly related to the court's decision making activities, such immunity may not be available." Applying this principle, we determined that an investigator acting in the course of his employment for a public defender, who was a member of the bar representing a defendant in a state criminal proceeding, enjoyed absolute immunity from suit:

> An investigator directly employed by the district attorney to do a particular investigative job related to the prosecution of an accused is not the equivalent of the ordinary police officer, who is empowered by the state to initiate discretionary acts depriving others of their rights and whose many activities in the prevention of crime and enforcement of law need not be related to the judicial process. In the same way, .... [t]he only function of [an investigator for a public defender] is to assist in the defense of the accused, a function directly related to the judicial process.

*Id.* at 207. Neither *Imbler v. Pachtman* nor its progeny in this court suggest any reason why we should now depart from this precedent. We therefore hold that appellee Terry, an investigator employed by a public defender to assist in the defense of appellant Stoica in the state criminal proceeding, is absolutely immune from liability under § 1983 based on his performance of that function.

### IX.

Accordingly, the three separate judgments of the district courts in the appeals before us will be affirmed in all respects.