**Ivie CLAY, Plaintiff,**

v.

**Saul FRIEDMAN, et al., Defendants.**

**No. 81 C 1860.**

United States District Court,
N. D. Illinois, E. D.

Feb. 12, 1982.
Supplemental Memorandum Opinion and
Order April 9, 1982

John S. Elson, Northwestern University Legal Clinic, Chicago, Ill., for plaintiff.

Joan S. Cherry, Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ivie Clay ("Clay") has sued several public defenders, their supervisors, the Cook County Office of the Public Defender and the Cook County Guardian ad Litem under 42 U.S.C. § 1983 ("Section 1983") based on the allegedly incompetent representation provided her in a criminal proceeding. Clay now seeks leave to file a Second Amended Complaint (the "Complaint"). For the reasons stated in this memorandum opinion and order the Court grants such leave, dismisses one defendant and certain claims against another defendant and orders further briefing on certain issues.

### Individual Public Defenders

Within the past two months the Supreme Court has rejected the concept that public defenders, in their lawyering activities, act "under color" of state law for Section 1983 purposes. *Polk County v. Dodson,* —— U.S. ——, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). Nonetheless Clay maintains she can sustain her action against the individual public defenders because:

(1) They are assigned excessive caseloads by the State and are thus prevented from attending to their cases properly.

(2) State action was involved in the hiring of incompetent lawyers, the failure to train them adequately and the failure to terminate them when their incompetence became evident.

(3) Proper representation is prevented by the State's established method of transferring cases among public defenders.

(4) Individual public defenders became *de facto* prosecutors by failing to act as adversaries and instead seeking to find Clay guilty.

(5) One individual public defender conspired with the prosecutors.

Clay's first three contentions claim in essence that because the State *caused* the malpractice, the public defenders themselves became state actors. *Polk County* is quite clear in rejecting that sort of argument.

*Polk County*'s main thrust was that because public defenders are lawyers they owe a duty to their defendant clients and are the State's adversary. State employment is not sufficient to tinge them with the color of state law.

Indeed *Polk County* dealt specifically with the first aspects of Clay's position when it said, *id.* at 451:

First, a public defender is not amenable to administrative direction in the same sense as other employees of the State. Administrative and legislative decisions undoubtedly influence the way a public defender does his work. State decisions may determine the quality of his law library or the size of his caseload. But a defense lawyer is not, and by the nature of his function cannot be, the servant of an administrative superior. Held to the same standards of competence and integrity as a private lawyer, see *Moore v. United States,* 432 F.2d 730 (CA3 1970), a public defender works under canons of professional responsibility that mandate his exercise of independent judgment on behalf of the client. "A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services." DR 5–107(B), ABA Code of Professional Responsibility (1977 ed.).

That passage explicitly rejects Clay's first three arguments.

*Polk County* did note a small exception by pointing out the States' constitutional obligation to "respect the professional independence of the public defenders whom it engages" (*id.*). If a state were "to *control* their action in a manner inconsistent with the principles on which *Gideon* rests"[1] (*id.* at 452, emphasis added)—that is, to control (not simply affect in collateral ways) how a public defender carried out his client's defense—state action could exist. But Clay has pleaded only administrative actions (akin to the caseload and library examples posed by the Supreme Court) that hampered the public defender's presentation of a defense. That is insufficient under *Polk County*.

Clay's fourth contention is somewhat different. Here the public defender allegedly acted under color of state law because of:

> his determination that it was in plaintiff's and the State's interest that she be convicted and incarcerated and that because of this belief "Friedman acted in concert with and on behalf of the State in its prosecution of Clay...."

In essence Clay asserts that in deciding not to act as an adversary, a public defender becomes a normal state employee. Again Clay misses the thrust of *Polk County*: Exercise of the lawyering function by public defenders does not implicate state action. Section 1983 liability cannot stem from that exercise, though it results in an improvident guilty plea or other consequence adverse to the client.[2]

Clay's final argument, charging one of the public defenders with acting in concert with the prosecution, is however unaffected by *Polk County*. On that claim the state action component flows from the *prosecutor's* office. Public defenders, like any other private person, act "under color" of law when they are willful participants in a joint action with state agents. *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186–87, 66 L.Ed.2d 185 (1980). By definition prosecutors are state actors, and a public defender who colludes with such a state official is caught in the Section 1983 net as well.

True enough a plaintiff must do more than present a bald allegation of conspiracy. *Briscoe v. La Hue*, 663 F.2d 713, 722–23 (7th Cir. 1981). But Clay has met that requirement. She alleges that public defender Friedman made a plea agreement with the prosecutor and acted in concert with the prosecutor to conceal the true nature of the agreement from Clay and the court. That factual statement suffices to support a conspiracy allegation.

Two individual public defenders, Saul Friedman and Roger Harris, are named as defendants. Because there is no conspiracy allegation as to Harris he is dismissed from this action. Friedman must remain a defendant, but only as to the allegation that he acted in concert with the prosecutors.

### Remaining Defendants

Clay sues three other groups of defendants: supervisory personnel in the Office of the Public Defender, that Office itself (more likely the County of Cook, for if the Office is not a legal entity it is not suable as such) and Clay's appointed Guardian ad Litem. None of those defendants have been called upon to address the applicability (if any) of *Polk County* to them. They are directed to file memoranda addressed to that subject and any other issues posed by the Second Amended Complaint on or before February 26, 1982 (of course they need only cross-refer to, not repeat, arguments already asserted in earlier briefs and still applicable). Clay shall submit a reply on or before March 8, 1982.

### Conclusion

Clay is given leave to file her Second Amended Complaint. Defendant Harris

---

1. Those principles were described by the Court as requiring "the services of an effective and independent advocate" (*id.*).

2. This holding does not apply to the allegation as to acting "in concert," a subject dealt with in the next paragraph of the text.

and certain claims as to defendant Friedman are dismissed. Briefs are ordered to be submitted on the remaining issues in accordance with the schedule just designated. This Court will then deal with the other pending motions. This action is set for a status report April 9, 1982 at 9:15 a. m.

## SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

■ Ivie Clay ("Clay"), claiming she was provided incompetent representation in a criminal proceeding, has sued several public defenders, their supervisors, the Cook County Office of the Public Defender and the Cook County Guardian ad Litem under 42 U.S.C. § 1983 ("Section 1983"). This Court's February 12, 1982 memorandum opinion and order (the "Order") dismissed Clay's individual "state action" claims against public defenders Roger Harris and Saul Friedman ("Friedman"), but retained a conspiracy claim against Friedman. Upon further consideration, however, this supplemental opinion determines that Friedman too must be dismissed from this action in its entirety.

*Polk County v. Dodson,* —— U.S. ——, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) held that public defenders do not act under color of state law. Accordingly the Opinion followed *Polk County* in rejecting Clay's principal claim against Friedman, while sustaining a secondary cause of action against Friedman only under the theory he conspired with a state actor. *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 186–87, 66 L.Ed.2d 185 (1980).

But the Court has taken a second look at the latter question—stimulated principally by the very recent Third Circuit decision in

*Black v. Bayer,* 672 F.2d 309 (3d Cir. 1982), holding public defenders absolutely immune from such Section 1983 conspiracy suits. *Black* echoes the pre-*Polk County* decision by our Court of Appeals in *Robinson v. Bergstrom,* 579 F.2d 401, 408–11 (7th Cir. 1978). Because *Polk County* did not deal with the absolute immunity doctrine (and this Court finds *Black* persuasive as to its continuing vitality), *Robinson* still constitutes binding precedent.[1] Clay therefore cannot maintain a Section 1983 action against Friedman even on a conspiracy theory.

■ Clay now seeks to amend her Complaint to state a cause of action against Friedman and Harris "directly under the Constitution ..." (presumably the Fourteenth Amendment). That approach is untenable.

It is true that *Polk County,* 102 S.Ct. at 51–52 n.12 (1981) reserved the question whether "under color" of state law and "state action" are necessarily identical criteria:

> Relying on such cases as *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) and *Moose Lodge v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), the respondent claims that the State's funding of criminal defenses makes it a "joint participant" in that enterprise, locked in a "symbiotic relationship" with individual public defenders. He urges us to hold on this theory that public defenders act under color of state law within the meaning of § 1983. We cannot do so. In both *Burton* and *Moose Lodge* the question was whether "state action" was present. In this case the question is whether a

1. Clay contends *Ferri v. Ackerman,* 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979) and *Briscoe v. Lahue,* 663 F.2d 713, 722–23 (7th Cir. 1981) undermine *Robinson.* But those arguments may more appropriately be addressed to our Court of Appeals. At worst *Ferri* is inferentially inconsistent with *Robinson,* hardly a basis for a district court's disregard of direct Seventh Circuit precedent. That also holds true for *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). It

is therefore unnecessary to discuss in detail the aspects of *Ferri* (see, e.g., 444 U.S. at 198 n.13, 100 S.Ct. at 406 n.13) and *Owen* (see, e.g., 445 U.S. at 637–38, 100 S.Ct. at 1408–09) that may distinguish those cases from *Robinson.* As for *Briscoe,* which sustained a Section 1983 conspiracy charge against a *private* lawyer (inferentially rejecting, without specifically discussing, any absolute immunity claim), it does not overrule the *Robinson* holding as to public defenders.

public defender—who is concededly an employee of the county—acted "under color of state law" in her representation of Russell Dodson. Although this Court has sometimes treated the questions as if they were identical, see *United States v. Price*, 383 U.S. 787, 794 and n.7, 86 S.Ct. 1152, 1157 and n.7, 16 L.Ed.2d 267 (1966), we need not consider their relationship in order to decide this case. Our factual inquiry into the professional obligations and functions of a public defender persuades us that Shepard was not a "joint participant" with the State and that, when representing respondent, she was not acting under color of state law.

But Clay's allegations are much like those in *Polk County*. This Court cannot ignore the clear mandate of that decision by side-stepping Section 1983 and sustaining a direct right of action under the Fourteenth Amendment. This opinion therefore holds that:

> (1) As to the non-conspiracy claims against Friedman sought to be grounded directly on the Fourteenth Amendment, Friedman was not a "state actor" because not a "joint participant" with the State.

> (2) As to the like conspiracy claim, Friedman is absolutely immune from Fourteenth Amendment as well as Section 1983 claims. *See Butz v. Economou*, 438 U.S. 478, 513–17, 98 S.Ct. 2894, 2914–16, 57 L.Ed.2d 895 (1978) (federal agency hearing examiner, prosecutor and attorney absolutely immune).

Clay is not without remedy. Common law malpractice has always been a claim available in the state courts. Clay cannot however force her allegations into a Section 1983 or Fourteenth Amendment mold in the face of the clear mandate of *Polk County* and *Robinson*.

### Conclusion

Clay's Complaint is dismissed in its entirety as to Friedman.[2] Clay is denied leave to amend her Second Amended Complaint by adding a proposed Paragraph 2(a).

---

**2.** As the discussion indicates, this dismissal should be understood to be predicated on federal jurisdictional grounds.