**Frank S. WAITS, Appellant,**

**v.**

**Hon. Raymond McGOWAN, A. J. S. C., Monmouth County, et al.**

**No. 74–1684.**

United States Court of Appeals, Third Circuit.

Submitted on briefs Jan. 21, 1975.

Decided April 30, 1975.

Frank S. Waits, pro se.

John G. Colannino, John M. Pillsbury, Pillsbury, Russell & Ashbey, Atlantic Highlands, N. J., for appellee Mulaney.

John M. Cannel, Asst. Public Defender, Newark, N. J., for appellees Hughes, Gearty and Cleary.

William F. Hyland, Atty. Gen. of N. J., Stephen Skillman, Asst. Atty. Gen., and Maureen McGrath, Deputy Atty. Gen., Trenton, N. J., for appellees Hon. Raymond McGowan and others.

Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This appeal challenges a June 28, 1974, district court order dismissing a complaint under 42 U.S.C. § 1985(3) and § 1983,[1] alleging that defendants had

---

1. Although plaintiff has emphasized in both his answer to the motion for dismissal of complaint (Doc. 3 in Civ. 74–525, D.N.J.) and in his notice of motion for summary judgment (Doc. 21 in above Civil 74-525) that he was basing his claim under 42 U.S.C. § 1985, and not under 42 U.S.C. § 1983, his reliance on Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962), involving an action under 42 U.S.C. § 1983, and the fact that the defendants have treated the action as one brought under 42 U.S.C. § 1983, have led us to consider 42 U.S.C. § 1983 as a possible basis for this suit. See II–C below.

conspired to withhold information showing the alleged illegal removal of plaintiff from Canada to New York without any extradition procedures or warrant, resulting in his present confinement in a New Jersey state prison after conviction followed by "a 9 to 10 year sentence imposed—by the Superior Court of New Jersey, Monmouth County for the crime of manslaughter and neglect inclusive." The complaint also alleges that defendants acted under orders of the above court, in violation of Waits' rights, to have him returned to Monmouth County in April 1973 "for the sole purpose of prosecution." The complaint seeks $250,000. in damages from each of the defendants. On May 22, 1974, a motion to dismiss the complaint was filed on behalf of defendants McGowan, Yaccarino and Mulaney. On May 28, 1974, a separate motion " . . . for an Order dismissing the complaint pursuant to Rule 12(b)(6), F.R.Civ.P., and for summary judgment pursuant to Rule 56, F.R.Civ. P." was filed on behalf of defendants McGowan and Yaccarino, with affidavits attached alleging that such defendants are and have been, at all relevant times, judges of the New Jersey state courts. No counter-affidavit has been filed to such affidavits. On June 3, 1974, a motion to dismiss the action because it fails to state a claim upon which relief can be granted was filed on behalf of defendants Gearity, Hughes and Cleary.

### I. Defendants McGowan, Yaccarino, Mulaney, Hughes and Cleary

Defendants McGowan and Yaccarino, being state judges, are immune from this suit. See Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Defendant Mulaney is alleged in the complaint to be Monmouth County prosecutor and, as such, is also immune from this suit. See Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966), and Kauffman v. Moss, 420 F.2d 1270 (3d Cir. 1970). Finally, the defendants Cleary and Hughes are each alleged to be "Public Defender-Monmouth County" and hence are immune from suit.[2] See Brown v. Joseph, 463 F.2d 1046, 1048–49 (3d Cir. 1972).[3]

### II. Defendant Gearity[4]

The complaint alleges that this defendant is "Investigator For Monmouth County, Public Defender Office" and the defendant has not controverted or supplemented this description by affidavit or other means contemplated by F.R. Civ.P. 56. For the reasons stated below, we have concluded that the June 28, 1974, order must be affirmed insofar as it dismisses the complaint as to Gearity. (See, particularly, A and C below.)

### A. Immunity under 42 U.S.C. §§ 1983 and 1985

In view of the allegations in this record that Gearity was acting solely in the course of his employment as an investigator for a public defender, working as a member of the bar in representing Waits as defendant in a state criminal prosecution (see first sentence of second paragraph under C below), we have concluded that he is immune from this suit. In Hill v. McClellan, 490 F.2d 859, 860 (5th Cir. 1974), the court pointed out that "a private person alleged to have conspired with a state judge and attorney who are entitled to immunity cannot be held liable, since he is not conspiring with persons acting under color of law against whom a valid claim could be stated. [Citing cases.]." See also French v. Corrigan, 432 F.2d 1211, 1214 (7th Cir. 1970); McIntosh v. Garofalo, 367 F.Supp. 501, 504–05 (W.D.Pa. 1973).

---

2. The Office of Public Defender of the State of New Jersey is established under N.J.S.A. 2A:158A–1 et seq.

3. The fact that defendants are alleged to have had "knowledge" of the alleged illegal extradition and ignored it does not constitute a violation of plaintiff's constitutional rights by them as officials of the demanding state under the decisions discussed under II–A below.

4. There are indications in the record that the correct name of this defendant is "Gearty."

■■■ The federal courts have recognized that where the function of an attorney's employee and the judicial process are closely allied, immunity will be granted, whereas if such function is not directly related to the court's decision-making activities, such immunity may not be available.[5] For example, a prosecuting attorney's investigative activity based on leads and suspicion is distinguished, in some cases, from his acts directly related to the prosecution of an accused, with the result that he is denied immunity in the former situation. Dodd v. Spokane County, Washington, 393 F.2d 330, 335 (9th Cir. 1968); Balistrieri v. Warren, 314 F.Supp. 824, 826 (W.D. Wis.1970). However, where the defendant is directly involved in the judicial process, he may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge. The following cases indicate the range of reasoning used by the courts to protect the clerk of the court from liability in civil rights suits: Denman v. Leedy, 479 F.2d 1097, 1098 (6th Cir. 1973) (failure to fix bond was within scope of official, quasi-judicial duties); Blouin v. Dembitz, 367 F.Supp. 415, 422 (S.D.N.Y.1973), aff'd solely on other grounds, 489 F.2d 488 (2d Cir. 1973) (issuance of arrest warrants by judge for failure to respond to summons is a judicial act for which the judge is immune and his protection

from suit may not be circumvented by pretense of bringing suit also against clerk); Barnes v. Dorsey, 480 F.2d 1057, 1060 (8th Cir. 1973) (plaintiff failed to allege that clerk was improperly performing what were purely ministerial duties and did not show injury as a result of illegal acts); Smith v. Rosenbaum, 460 F.2d 1019, 1020 (3d Cir. 1972) (revocation of bail bond was a ministerial act mandated by statute); Davis v. Quarter Sessions Court, 361 F.Supp. 720, 722 (E.D.Pa.1973) (claim against office of clerk for failure to furnish prisoner with copy of transcript of criminal proceedings is barred by doctrine of judicial immunity; no evidence supported a claim against the clerk personally; negligent conduct by a state official is not of itself sufficient to impose liability under Civil Rights Act).

■■ The recent Supreme Court case of Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), reemphasizes the holding of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that a state officer's acts which constitute an abuse of the power conferred on him by the state are actionable under the Civil Rights Act even though the acts lie outside the scope of the state officer's authority. Several cases grant the extension of the judicial immunity afforded to the judge or clerk of the court to cover police officers engaged in ministerial functions under their direction.[6]

---

**5.** We note that the Supreme Court of the United States has used this language in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974):

> "[I]n varying scope, a qualified immunity is available to officers of the executive branch of [the] Government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the

course of official conduct." 416 U.S. 247–48, 94 S.Ct. 1692.

> "Implicit in the idea that officials have some immunity—absolute or qualified—for their acts, is a recognition that they may err. The concept of immunity assumes this and goes on to assume that it is better to risk some error and possible injury from such error than not to decide or act at all." 416 U.S. 242, 94 S.Ct. 1689.

**6.** Fowler v. Alexander, 478 F.2d 694, 696 (4th Cir. 1973) (sheriff and jailer confining plaintiff temporarily were executing a court order and are immune); Gigliotti v. Redevelopment Authority of City of New Castle, 362 F.Supp. 764, 766 (W.D.Pa.1973); aff'd, 492 F.2d 1238 (3d Cir. 1974) (sheriff executing a writ in connec-

In Scheuer v. Rhodes, *supra*, 416 U.S. at 250, 94 S.Ct. at 1693, the Court said:

" . . . the complaints place directly in issue whether the lesser officers and enlisted personnel of the Guard acted in good faith obedience to the orders of their superiors. Further proceedings, either by way of summary judgment or by trial on the merits, are required. . . . "

An investigator directly employed by the district attorney to do a particular investigative job related to the prosecution of an accused is not the equivalent of the ordinary police officer, who is empowered by the state to initiate discretionary acts depriving others of their rights and whose many activities in the prevention of crime and enforcement of law need not be related to the judicial process. In the same way, an investigator of the public defender has no power to deprive anyone of his or her rights. The only function of such an investigator is to assist in the defense of the accused, a function directly related to the judicial process.

### B. *Alleged objections to extradition procedures*

Petitioner alleges that due process was violated by Gearity's participation in an allegedly unlawful extradition. It has been held that the trial of a person unlawfully removed to the jurisdiction of the trial court does not affect its validity. Ker v. Illinois, 119 U.S. 436, 440, 7 S.Ct. 225, 30 L.Ed. 421 (1886);[7] United States ex rel. Lujan v. Gengler, 510 F.2d 62 (2d Cir. 1975);[8] United States v. Cotten, 471 F.2d 744, 748 (9th Cir.), cert. denied, 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 396 (1973); United States v. Caramian, 468 F.2d 1369 (5th Cir. 1972); Goodspeed v. Beto, 341 F.2d 908 (5th Cir. 1965), cert. denied, 386 U.S. 926, 87 S.Ct. 867, 17 L.Ed.2d 798 (1967); see also Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct.

---

tion with eminent domain proceeding was acting under the direction of the court and could not be sued under § 1983); Burke v. McDonnell, 358 F.Supp. 716, 718–19 (S.D.N.Y.1973) (the district court on the one hand stated that an investigator working under the district attorney was covered by the "quasi-immunity" of the district attorney but later stated that the investigator's statement of whether, in his opinion, the defendant was cooperating involved a quasi-judicial opinion in its own right, and, in addition, the court mentioned that there was no showing of bad faith on the part of the investigator); Ellenburg v. Shepherd, 304 F.Supp. 1059, 1061 (E.D.Tenn.1966), aff'd, 406 F.2d 1331 (6th Cir.), cert. denied, 393 U.S. 1087, 89 S.Ct. 878, 21 L.Ed.2d 781 (1969) (Police officers acting *properly* under a warrant or other lawful process which is regular on its face and where their motives and intent are proper are accorded immunity. Held: opposing affidavits raised a material issue of fact with respect to officers' improper motivation precluding summary judgment.); Rhodes v. Houston, 202 F.Supp. 624, 636 (D.Neb.), aff'd per curiam, 309 F.2d 959 (5th Cir. 1962), cert. denied, 373 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963), motion to vacate denied, 258 F.Supp. 546 (1966), aff'd per curiam, 418 F.2d 1309 (1969), cert. denied, 397 U.S. 1049, 90 S.Ct. 1382, 25 L.Ed.2d 662 (1970) (police officers performing on the authority of the commitment issued by the clerk of the court are immune). See also Wilhelm v. Turner, 431

F.2d 177 (8th Cir. 1970), cert. denied, 401 U.S. 947, 91 S.Ct. 919, 28 L.Ed.2d 230 (1971).

7. It may be that plaintiff has a cause of action for illegal removal procedures under state law. See *Ker, supra,* 119 U.S. at 444–45, 7 S.Ct. 225.

8. This record contains no allegations of illegal electronic surveillance and unconstitutional treatment in any way comparable to the factual situation before the court in United States v. Toscanino, 500 F.2d 267 (2d Cir. 1974). Furthermore, as the court noted at 500 F.2d 276, that case involved a challenge to a United States District Court trial, as opposed to state court proceedings such as those involved in this case. Also, the language of *Toscanino* was limited in United States ex rel. Lujan v. Gengler, 510 F.2d 62 (2d Cir. 1975), where Chief Judge Kaufman, speaking for the court, said at page 66:

" . . . but for the charge that the law was violated during the process of transporting him to the United States, Lujan charges no deprivation greater than that which we would have endured through lawful extradition. We scarcely intend to convey approval of illegal government conduct. But we are forced to recognize that, absent a set of incidents like that in *Toscanino,* not every violation by prosecution or police is so egregious that *Rochin* and its progeny requires nullification of the indictment."

See 88 Harv.L.Rev. 813 (1975).

509, 96 L.Ed. 541 (1952); Hein v. Ramsden, 36 Misc.2d 345, 232 N.Y.S.2d 633 (Sup.Ct.1962); People v. Garner, 57 Cal.2d 135, 18 Cal.Rptr. 40, 367 P.2d 680, 683 (1961), cert. denied, 370 U.S. 929, 82 S.Ct. 1571, 8 L.Ed.2d 508 (1962), where the Court said: " . . . there being no provision in the Constitution, laws or treaties of the United States which guarantees him (the defendant) any protection in such transaction." It has been suggested that at least one modern precedent casts doubt upon these holdings. See United States v. Toscanino, 500 F.2d 267 (2d Cir. 1974); but see United States ex rel. Lujan v. Gengler, *supra*, and note 8.

█ International extradition is governed only by considerations of comity and treaty provisions. See 31 Am.Jur.2d 928. An examination of Article X of the Treaty between the United Kingdom and the United States of August 9, 1842, as amended by the Extradition Convention of July 12, 1889, proclaimed on March 25, 1890, makes clear that plaintiff's allegations do not show a violation of any treaty provisions governing extradition between this country and Canada. The protections or rights which accrue to the extradited person primarily exist for the benefit of the asylum nation (Canada), whereas plaintiff's complaint alleges violations of constitutional rights of citizens of the demanding nation (The United States of America). See Ker v. Illinois, *supra*, 119 U.S. at 443, 7 S.Ct. 225; United States v. Rauscher, 119 U.S. 407, 430, 7 S.Ct. 234, 30 L.Ed. 425 (1886); United States ex rel. Lujan v. Gengler, *supra* at page 67;[9] United States v. Greene, 146 F. 766, 771 (S.D.Ga.1906). For example, Article VI of the above Extradition Convention taking effect in 1890 provides:

"The extradition of fugitives under the provisions of this Convention and of the said Tenth Article shall be carried out in the United States and in Her Majesty's dominions, respectively, in conformity with the laws regulating extradition for the time being in force in the surrendering States."

█ The asylum country (Canada) has the obligation to deliver up to the demanding nation (The United States of America) a criminal who has fled from justice on proper demand. See Ker v. Illinois, *supra*, 119 U.S. at 442, 7 S.Ct. 225.

The foregoing cases do not rule upon possible civil liability under 42 U.S.C. §§ 1983 and 1985(3) for a due process violation which took place prior to the criminal trial, and we need not pass upon such possible civil liability in view of A above.

### C. *Application of 42 U.S.C. § 1985*

█ Since plaintiff has not alleged a conspiracy to deprive him "of the equal protection of the [United States] laws, or of equal privileges and immunities under the laws" and an overt act in furtherance of the object of the conspiracy with resulting injury to the plaintiff, there is no cause of action alleged in this complaint under 42 U.S.C. § 1985(3). See Tollett v. Laman, 497 F.2d 1231, 1232–33 (8th Cir. 1974).

█ We note that once the public defender undertakes to represent a defendant he acts thereafter as any attorney practicing as a member of the bar of the court, see Brown v. Joseph, *supra*, at 1047–48.[10] Furthermore, the complaint does not state a cause of action under 42 U.S.C. § 1985(3) because of failure to allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." See Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338

---

**9.** The pleadings do not allege that Canada has objected in any way to the removal of Waits to this country.

**10.** See also John v. Hurt, 489 F.2d 786, 787–88 (7th Cir. 1973). As noted above under A,

Gearity, as an investigator, would be operating under the supervision of, and in support of, a member of the bar whose primary duty is to represent his client to the best of his ability and not in aid of the State of New Jersey.

(1971); Richardson v. Miller, 446 F.2d 1247, 1249 (3d Cir. 1971).

The June 28, 1974, district court judgment will be affirmed.