Stevie J. WHITE, Appellant,

v.

Bill ARMONTROUT, Appellee;

John Ashcroft, Defendant;

Harry Lauf, Appellee;

Richard Hoffman, Los Angeles Police Department, and Mark Richardson, Assistant Prosecuting Attorney, Cole County, Missouri, Defendants;

Betty Day, a Missouri Extradition Officer, Appellee;

R. Marks, Los Angeles Police Department, Defendant;

Harvey Miller, Appellee;

and

Dick D. Moore, Defendant.

No. 93–2873.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1994.

Decided July 6, 1994.

Vincent O'Flaherty, Kansas City, MO, argued, for appellant.

Orval E. Jones, Asst. Atty. Gen., Jefferson City, MO, for appellee.

Before FAGG, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In early 1987, Stevie White was incarcerated in a state prison in Missouri. After an exchange of extradition paperwork about which he knew nothing, he was transferred in mid–1987 to the custody of state police officers from California, who took him there to face murder charges.

A few months later, Mr. White sued for damages in federal district court, alleging that his extradition was unlawful and that various state officials had improperly denied him a hearing before he was extradited. Various defendants were added and dismissed over a period of a few years. Only four defendants are relevant to this appeal— Bill Armontrout, the warden at the Missouri prison where Mr. White was originally incarcerated; Harry Lauf, the records officer for the prison; Harvey Miller, the control center desk officer at the prison who released Mr. White into the custody of the state police officers from California; and Betty Day, the extradition officer for the governor of Missouri.

On motion for summary judgment, the district court dismissed Ms. Day, holding that as an agent of the governor, she had absolute immunity in carrying out the governor's quasi-judicial determinations with respect to extradition requests from other states. On motion for summary judgment, the district court dismissed Mr. Lauf, holding that it was not clearly established law that a records officer was responsible for ensuring that a prisoner subject to extradition received a hearing prior to transfer, and therefore that Mr. Lauf was shielded from suit by the doctrine of qualified immunity.

On motion for summary judgment with respect to Mr. Armontrout and Mr. Miller, the district court held in mid–1993 that because they were "charged with plaintiff's custody when he was turned over to California officers," they had deprived Mr. White of procedural due process by failing to ensure that he received a hearing prior to his extradition. The district court held in addition,

however, that Mr. White had proved no actual damages and therefore awarded him nominal damages of only one dollar from each defendant found liable. On motion for reconsideration, the district court vacated the judgment against Mr. Miller, apparently on the ground that he was protected by the doctrine of qualified immunity, although the nature of the motion for reconsideration is ambiguous and the court's order does not specify the basis for its action.

Mr. White appeals, arguing that his extradition was unlawful and that, even if the extradition was proper, summary judgment was inappropriate with respect to Ms. Day, Mr. Lauf, and Mr. Miller. Mr. White further contends that he was entitled to a hearing on the question of punitive damages and attorneys' fees with respect to Mr. Armontrout. We affirm the district court.[1]

## I.

Mr. White argues that his extradition was unlawful because he was not a fugitive from justice, as required by federal and state law with respect to persons subject to extradition. *See* U.S. Const. art. IV, § 2, cl. 2; 18 U.S.C. § 3182; and Mo.Stat.Ann. § 548.021, § 548.031, § 548.131, and § 548.151. He contends that he had *no notice of the charges* in California and therefore could not be considered to have fled from them.

That argument has long been rejected by the courts. *See, e.g., Roberts v. Reilly,* 116 U.S. 80, 97, 6 S.Ct. 291, 300, 29 L.Ed. 544 (1885), and *King v. United States,* 144 F.2d 729, 731 (8th Cir.1944), *cert. denied,* 324 U.S. 854, 65 S.Ct. 711, 89 L.Ed. 1413 (1945) (both to the effect that to be a fugitive for extradition purposes, a person need not have knowledge of the charges but must merely have left the state in which the charges are pending); *see also In the Matter of Assarsson,* 687 F.2d 1157, 1162 (8th Cir.1982) (same holding with respect to fugitive status from another country). We are bound by those holdings.

1. The Honorable Scott O. Wright, Senior United States District Judge for the Western District of Missouri.

## II.

■ Under Missouri law, requests from other states for the extradition of a person in Missouri are sent to the governor. *See* Mo. Stat.Ann. § 548.021, § 548.031, § 548.041, and § 548.071. The governor's duty is to ascertain whether the extradition request states in writing "that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state," and is "accompanied by [an authenticated] copy of the indictment found or by [an authenticated] information supported by affidavit made before [a] ... judge there, together with a copy of any warrant which was issued thereupon." *See* Mo.Stat.Ann. § 548.031; *see also Seger v. Camp*, 576 S.W.2d 722, 724 (Mo.1978) (*en banc*). "If the governor decides that the demand should be complied with," the governor has the power to "sign a warrant of arrest" for the person sought, *see* Mo.Stat. Ann. § 548.071, and to direct a "peace officer or other person ... to arrest" the person sought, *see* Mo.Stat.Ann. § 548.081. The governor's role in evaluating extradition requests and issuing arrest warrants consequent to them is judicial in nature and therefore entitled to absolute immunity from suit. *See, e.g., Arebaugh v. Dalton*, 600 F.Supp. 1345, 1350–51 (E.D.Va.1985); *see also Smith v. Lamm*, 629 F.Supp. 1184, 1185 (D.Colo. 1986).

■ Ms. Day was the extradition officer in the Missouri governor's office. In sworn answers to interrogatories, submitted with her motion for summary judgment, Ms. Day stated that her duties "included administering foreign and domestic requests for extradition and issuing rendition warrants." She further stated that when a request for extradition reached her office, "the extradition request would be forwarded to the Missouri Attorney General's Office, ... then returned to the Governor's Office, ... then forwarded to the Secretary of State's Office. After the request and other paperwork were returned to the Governor's Office for final review, they were then forwarded to the appropriate authority having custody of the fugitive." "[A]s the extradition officer," Ms. Day stated, "I performed those responsibilities for the Gov-

ernor's Office." In his response to Ms. Day's motion for summary judgment, Mr. White offered nothing to controvert Ms. Day's description of her duties.

We affirm the district court's holding, therefore, that Ms. Day's duties are quasi-judicial in nature and, accordingly, that she is entitled to absolute immunity. *See, e.g., Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 991 n. 20, 47 L.Ed.2d 128 (1976), and *Brewer v. Blackwell*, 692 F.2d 387, 393 n. 8 (5th Cir.1982) ("[s]igning the warrant was a judicial act ... which ... is protected by absolute immunity"); *see also Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978), and *Waits v. McGowan*, 516 F.2d 203, 206 (3d Cir.1975) ("where the defendant is directly involved in the judicial process, he may receive immunity in his own right for the performance of a discretionary act *or* he may be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge") (emphasis supplied).

## III.

■ Under both federal and Missouri law, the person to be extradited has the right to a hearing before being transferred to officers of the state that requested the extradition. *See, e.g., Crumley v. Snead*, 620 F.2d 481, 483, 483 n. 9 (5th Cir.1980), and *U.S. ex rel. Darcy v. Superintendent of County Prisons*, 111 F.2d 409, 411 (3d Cir.1940), *cert. denied*, 311 U.S. 662, 61 S.Ct. 19, 85 L.Ed. 425 (1940); *see also* Mo.Stat.Ann. § 548.101. The essence of Mr. White's complaint is that the defendants failed to ensure that he received that hearing. The district court held explicitly that Mr. Lauf was shielded from suit on that claim because of the doctrine of qualified immunity; by its order on Mr. Miller's motion for reconsideration, the district court held implicitly that Mr. Miller was so shielded as well.

■ A government official who performs discretionary functions is protected from suit under the doctrine of qualified immunity as long as that official's conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he [did] violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In other words, "[a]lthough a prison official is not always immune from liability merely because there is no case establishing a constitutional right in identical circumstances, if there is a legitimate question as to whether the more particularized constitutional right exists under the facts of the case, it cannot be said that the prison official's action violated clearly established law." *Brown v. Frey,* 889 F.2d 159, 165 (8th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990).

■ The district court's conclusion was that only the person charged with legal custody of a prisoner at the time of an extradition transfer would have the responsibility to ensure that the prisoner received a hearing before that transfer. *See also* Mo.Stat.Ann. § 548.111 ("[a]ny officer who shall deliver [a prisoner] in his custody" may be criminally liable for failure to comply with state law requiring a hearing before an extradition transfer). The district court stated that, under the case law, only the warden of a prison has been held to be so charged for purposes of suits under 42 U.S.C. § 1983 relating to extradition. *See, e.g., Long v. Shillinger,* 927 F.2d 525, 526–27 (10th Cir.1991). The district court held, therefore, that it was not clearly established law that a records officer or a control center desk officer could be held liable for failure to ensure that a prisoner received a hearing prior to an extradition transfer and, accordingly, that Mr. Lauf and Mr. Miller were entitled to immunity in this suit. Mr. White offers no authority to the contrary.

We agree with the district court's analysis on that point. We therefore affirm its rulings with respect to Mr. Lauf and Mr. Miller.

## IV.

The state argues in its brief that the county prosecuting attorney is the official responsible under Missouri law for ensuring that a prisoner receives a hearing prior to an extradition transfer. *See* Mo.Stat.Ann. § 548.101; *see also* Mo.Stat.Ann. § 56.060.1, § 56.080, and § 56.090 (duties of county prosecuting attorneys). The judgment against Mr. Armontrout was not, however, cross-appealed. We therefore turn to Mr. White's contentions that he is entitled to a hearing in which he could present evidence to support claims for punitive damages and attorneys' fees against Mr. Armontrout. *See, e.g., Brewer v. Chauvin,* 938 F.2d 860, 864 (8th Cir.1991) (*en banc*) (even when prevailing party receives only nominal damages, award of punitive damages and attorneys' fees is permissible).

■ The district court did not address either punitive damages or attorneys' fees in its opinion, although Mr. White asked for both in his complaint. We have examined the materials submitted with respect to the summary judgment motion and response, however, and see no evidence whatsoever of conduct by Mr. Armontrout "motivated by evil motive or intent, or ... involv[ing] reckless or callous indifference to the federally protected rights" of Mr. White, *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983), *see also id.* at 51, 103 S.Ct. at 1637. Under those circumstances, we hold that the district court's apparent failure to consider the question of punitive damages was harmless.

■ We find no motion for attorneys' fees by Mr. White. Since Mr. White was representing himself in district court, moreover, he is not entitled to attorneys' fees. *See, e.g., Coleman v. Turner,* 838 F.2d 1004, 1005 (8th Cir.1988) (*per curiam*); *see also Kay v. Ehrler,* 499 U.S. 432, 435, 111 S.Ct. 1435, 1436, 113 L.Ed.2d 486 (1991) ("[t]he Circuits are in agreement ... on the proposition that a *pro se* litigant who is *not* a lawyer is *not*

**362**

entitled to attorney's fees. ... we are ... satisfied that [those cases] were correctly decided") (emphasis in original).

## V.

For the reasons stated, we affirm the judgment of the district court.