OPINION
PER CURIAM.
David Rivera appeals pro se from a District Court order granting Defendants’ motions to dismiss the complaint for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). For the reasons that follow, we will affirm the District Court’s judgment.
I. Background,
In June 2003, Rivera was arrested in Northumberland County, Pennsylvania and incarcerated in county prison on theft and related charges. The day after his arrest, the State of Florida issued detainers requesting Rivera’s return to Florida in connection with criminal charges pending there.[1] Rivera pleaded guilty to the Pennsylvania charges. Prior to his Pennsylvania sentencing, in March 2004, Rivera filed a petition for a writ of habeas corpus in Pennsylvania state court, seeking dismissal of the Florida detainers.
The Northumberland County Court of Common Pleas held that Rivera had not been brought before the court on the Florida detainers in a timely manner pursuant to the thirty-day requirement of Pennsylvania’s Uniform Criminal Extradition Act (“UCEA”), 42 Pa.C.S. § 9136.[2] The state court therefore granted Rivera’s habeas corpus petition and dismissed the Florida detainers.[3] At that time, Rivera was incarcerated in Pennsylvania state prison at Graterford, serving the sentence on his Pennsylvania conviction.
In May 2005, while Rivera was still imprisoned in Pennsylvania, Florida issued new detainers under the IAD.[4] Rivera was *706 scheduled to complete his sentence and be released from SCI-Graterford on June 4, 2006, but he was not released. Instead, he appeared before the Montgomery County Court of Common Pleas on June 5, 2006, which issued a commitment order against him under the UCEA,[5] 42 Pa.C.S. § 9134, for fleeing the charges pending in Florida.[6] The Court of Common Pleas remanded Rivera to the Montgomery County prison.
At the end of the UCEA’s thirty-day confinement period, see 42 Pa.C.S. § 9136, the Commonwealth sought and was granted ex parte permission to confine Rivera for an additional sixty days, to await Rivera’s extradition papers from Florida. Rivera filed another state court petition for a writ of habeas corpus. The Montgomery County Court of Common Pleas granted the petition on August 11, 2006, holding that Rivera’s confinement should not have been extended without affording Rivera a. hearing. The court again dismissed the Florida detainers. In the interim, on July 31, 2006, Governor Rendell signed a Governor’s Warrant for Rivera’s detention based on an extradition request sent by Florida’s governor.
On August 15, 2006, Rivera’s release paperwork was completed, but he was not permitted to leave the Montgomery County prison. Based upon information provided by ADA Ricca concerning the pending Florida charges and the Governor’s Warrant, police issued a criminal complaint charging Rivera with being a fugitive from justice in Florida. On that basis, Rivera continued to be detained.
Rivera filed yet another state court petition for a writ of habeas corpus. Rivera’s counsel argued that the detention after the August 11, 2006, grant of habeas relief was illegal, and that the Commonwealth should have discharged Rivera from custody and obtained a new Governor’s Warrant. On September 18, 2006, the Court of Common Pleas granted Rivera’s petition and dismissed and vacated the Governor’s Warrant without prejudice. Among other things, the court indicated that, under Commonwealth ex rel. Coffman v. Aytch, 238 Pa.Super. 584, 361 A.2d 652, 654 (1976), Rivera should have been released and immediately rearrested, rather than held continuously.
Pursuant to the September 18, 2006, grant of habeas corpus relief, Rivera was discharged from the Montgomery County prison on September 20, 2006. He was immediately re-arrested in a nearby prison parking lot on a new criminal complaint, again charging him as a fugitive from justice in Florida. On October 12, 2006, within the permissible thirty-day detention period under the UCEA, Governor Rendell issued a new Governor’s Warrant.
Rivera filed another state court petition for a writ of habeas corpus. This time, the Montgomery County Court of Common Pleas denied the writ and ordered Rivera’s extradition to Florida. Rivera is now serving a sentence in Florida.
Rivera then filed a civil action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Pennsylvania. The District Court appointed Rivera counsel, and through counsel, Rivera filed an amended complaint. In it, Rivera alleges that Julio Algarin (warden of the Montgomery County prison), Karen *707 Ricca (Assistant District Attorney for Montgomery County), and Governor Edward Rendell violated Rivera’s constitutional rights under the Fourth and Fourteenth Amendments by detaining him after the expiration of his Pennsylvania sentence on June 4, 2006, and pursuant to the Governor’s Warrant issued on July 31, 2006.
Rivera does not dispute that, at all relevant times, criminal charges were pending against him in Florida and he was a fugitive from justice there. Rivera also does not dispute his September 20, 2006, arrest and subsequent detention pursuant to the second Governor’s Warrant, which ultimately led to his extradition to Florida. Rather, Rivera’s amended complaint claims that authorities failed to adhere to proper procedures at various times from June 5, 2006 (the day after he completed his Pennsylvania sentence), through September 19, 2006, rendering his detention unconstitutional for some or all of that approximately three-month period. He seeks compensatory[7] and punitive[8] damages, as well as injunctive relief.
On January 10, 2008, the District Court dismissed Rivera’s § 1983 complaint for failure to state a claim upon which relief can be granted. It explained that Rivera was legally detained after June 4, 2006, pursuant to a commitment order. The District Court further explained that Rivera’s detention pursuant to the first Governor’s Warrant was likewise legal, because the warrant was validly issued.
Rivera filed a timely notice of appeal.
II. Analysis
We exercise plenary review over the District Court’s grant of Defendants’ motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir.2006). “[W]hen ruling on a defendant’s motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.” Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to “state a claim to relief that is plausible on its face.” Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), citing Twombly, 550 U.S. at 570, 127 S.Ct. 1955. In deciding a motion to dismiss, we may consider the allegations of the complaint, exhibits attached thereto, and matters of public record. See Pension Benefit Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir.1993).
A. Claims Against Governor Rendell
Rivera contends that Governor Rendell violated his constitutional rights *708 when Rivera was detained on July 31, 2006, pursuant to the first Governor’s Warrant. Rivera claims that Governor Rendell issued the warrant “with the knowledge that it had no basis in law or fact.” Amended Complaint ¶ 52.
The District Court properly dismissed Rivera’s claims against Governor Rendell. As the District Court correctly observed, there is no dispute that Florida’s extradition demand was facially valid. See 42 Pa.C.S. § 9124. Pursuant to Pennsylvania law, Governor Rendell was required to accept that facially valid extradition request and issue a Governor’s Warrant. See 42 Pa.C.S. §§ 9123, 9128; see also Puerto Rico v. Branstad, 483 U.S. 219, 227, 107 S.Ct. 2802, 97 L.Ed.2d 187 (1987) (“[T]he commands of the Extradition Clause are mandatory, and afford no discretion to the executive officers or coui'ts of the asylum State.”). A “governor’s role in evaluating extradition requests and issuing arrest warrants consequent to them is judicial in nature and therefore entitled to absolute immunity from suit.” White v. Armontrout, 29 F.3d 357, 360 (8th Cir. 1994); see also, e.g., Overall v. Univ. of Penna., 412 F.3d 492, 497 (3d Cir.2005) (discussing the meaning of “quasi-judicial” proceedings, and providing as one example “the governor of a State of the United States engaged in an extradition hearing”); Miller v. Davis, 521 F.3d 1142, 1147 (9th Cir.2008) (governor entitled to absolute immunity when acting in a quasi-judicial role); Dababnah v. Keller-Burnside, 208 F.3d 467, 471-72 (4th Cir.2000) (extradition is intimately associated with judicial phase of criminal process).
B. Claims Against Defendant Ricca
Prosecutors are generally immune from liability for damages in actions brought pursuant to § 1983. See Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Although prosecutorial immunity is not unlimited in scope, it clearly applies when prosecutors are acting in the role of advocates on behalf of the state. See id.; see also Odd v. Malone, 538 F.3d 202, 208 (3d Cir.2008).
Based upon our review of the amended complaint, Rivera’s allegations against Defendant Ricca are limited to actions concerning the initiation (and, after the state court’s grant of habeas corpus relief, re-initiation) of extradition proceedings concerning the charges pending against Rivera in Florida. See Amended Complaint ¶¶ 20, 33. Ricca’s efforts to initiate extradition proceedings against Rivera are prosecutorial in nature and entitle her to immunity from liability. See Ross v. Meagan, 638 F.2d 646, 648-49 (3d Cir. 1981), overruled on other grounds by Neitzke v. Williams, 490 U.S. 319, 328, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Waits v. McGowan, 516 F.2d 203, 205 (3d Cir. 1975); see also, e.g., Dababnah, 208 F.3d at 471-72.
In addition to monetary damages, Rivera seeks injunctive relief against Defendant Ricca, requesting that “all future detentions ... be done lawfully and in a manner consistent with the preservation of Mr. Rivera’s constitutional rights.” See Amended Complaint ¶¶ 50(c), 59(c). To the extent Rivera’s claim for injunctive relief attempts to obtain an immediate or a speedier release from incarceration, it is barred by Preiser v. Rodriguez, 411 U.S. 475, 476-77, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In addition, the claim is moot. In general, a claim becomes moot “when the issues presented are no longer ‘live’ or the parties lack a legally cognizable interest in the outcome.” Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). Because there is no dispute that Rivera’s extradition proceedings are concluded, Rivera no longer has a cognizable *709 interest in avoiding unconstitutional detentions while awaiting extradition to Florida. Any unrelated future prosecutions or detentions that Rivera might face are far too speculative to warrant an award of injunctive relief.
C. Claims Against Defendant Algarin
Rivera alleges that Defendant Algarin unconstitutionally detained him after June 4, 2006. Through June 4, 2006, Rivera had been serving a Pennsylvania sentence at SCI-Graterford. On June 5, 2006, Rivera was ordered to appear before the Montgomery County Court of Common Pleas, which ordered him remanded to Montgomery County prison to await extradition to Florida. When Rivera arrived at the Montgomery County prison on June 5, 2006, Algarin could not permissibly release him. As warden of that facility, Algarin was bound to act pursuant to the state court’s commitment order. An “action taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages.”[9] Hamilton v. Leavy, 322 F.3d 776, 782-83 (3d Cir.2003); see also Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969). Thus, the District Court properly dismissed Rivera’s § 1983 damages claim concerning this detention.
Rivera successfully challenged this detention in a petition for a writ of habeas corpus, which the Montgomery County Court of Common Pleas granted on August 11, 2006.[10] Thus, as of August 11, 2006, the commitment order was no longer facially valid, and did not provide a further basis for detaining Rivera. Presumably pursuant to that order, Rivera’s release paperwork was completed on Tuesday, August 15, 2006.
However, on July 31, 2006, prior to the grant of habeas corpus relief, Governor Rendell issued a Governor’s Warrant for Rivera’s detention based upon an extradition package sent by Florida’s governor. Therefore, the July 31, 2006, Governor’s Warrant provided an independent basis for continuing to detain Rivera.[11] Rivera claims that this detention was unconstitutional. Once again, however, Defendant Algarin is entitled to immunity from Rivera’s § 1983 claim. Under the circumstances, it was reasonable to detain Rivera pursuant to the facially valid Governor’s Warrant. See Harlow v. Fitzgerald, 457 *710 U.S. 800, 815-16, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Baker v. McCollan, 443 U.S. 137, 142-145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).[12]
III. Conclusion
For the foregoing reasons, we agree with the District Court’s conclusion that Rivera’s amended complaint fails to state a claim upon which relief can be granted. We will affirm the District Court’s order dismissing the complaint.

. In Florida in 2002, Rivera was charged with various crimes. After he was released on bond, Rivera failed to appear for trial.

. The Court of Common Pleas held that the UCEA, 42 Pa.C.S. § 9121 et seq., rather than the Interstate Agreement on Detainers ("IAD”), 42 Pa.C.S. § 9101 et seq., applied, because Rivera was not yet serving a sentence when Florida issued the detainers. See 42 Pa.C.S. § 9140 ("If a criminal prosecution has been instituted against such person under the laws of this Commonwealth and is still pending, the Governor ... [may] hold him until he has been tried and discharged or convicted and punished in this Commonwealth.”).

. Rivera appealed, arguing that the Court of Common Pleas should have dismissed the Florida charges because Florida violated his right to a speedy trial. The Superior Court held that it lacked jurisdiction to dismiss criminal charges filed in Florida.

. Rivera moved in Florida state court for consideration nolle prosequi, claiming that the Florida criminal charges should have been dismissed because Florida violated his right to a speedy trial. The Florida court denied the motion, holding that Rivera was not entitled to the benefit of the speedy trial rule until he either returned to Florida or requested disposition of the charges in compliance with the IAD. Rivera also sought mandamus relief, *706 which the Florida court denied for essentially the same reasons.

. Rivera was held under the UCEA because he was no longer serving a sentence on June 5, 2006.

. Although the District Court refers to the commitment order's date as June 2, 2006, this appears to be an error.

. "[T]he abstract value of a constitutional right may not form the basis for § 1983 damages." Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 308, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). Rather, "substantial damages may only be awarded to compensate for actual injury suffered as a result of the violation of a constitutional right.” Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir.2000), citing Stachura, 477 U.S. at 308, 106 S.Ct. 2537. Although we need not reach the issue, we express serious doubt as to whether Rivera pled any entitlement to compensatory damages.

. Punitive damages are available under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Rivera’s amended complaint raised no allegations to support a punitive damages award.

. We address only Rivera's damages claims. Rivera has no viable claim for injunctive relief against Defendant Algarin, for the same reasons he has no viable claim for injunctive relief against Defendant Ricca. See supra.

. The Court of Common Pleas struggled with Pennsylvania case law holding that an individual cannot be "re-arrested” if not first discharged from custody. See Coffman, 361 A.2d at 654. For purposes of Rivera’s § 1983 action, we question whether this technical requirement of Pennsylvania procedure rises to the level of a due process deprivation. See, e.g., Barton v. Norrod, 106 F.3d 1289, 1295 (6th Cir.1997) ("[Fjailure to comply with established procedures does not deprive the fugitive of any protected right."). Moreover, there is no dispute that the Commonwealth could have cured the arguable procedural flaw by releasing and immediately re-arresting Rivera. "[T]o establish a § 1983 claim for monetary relief, including a showing of damages, [plaintiff] will have to prove that he suffered some deprivation of liberty greater than that which he would have suffered through extradition in full compliance with the UCEA.” Knowlin v. Thompson, 207 F.3d 907, 909 (7th Cir.2000). Thus, if Rivera stated a due process claim at all, it appears he would be entitled to no more than nominal damages. See Farrar v. Hobby, 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); see also, e.g., Harden v. Pataki, 320 F.3d 1289, 1300-01 (11th Cir.2003).

.We surmise that the completion of Rivera's release paperwork was an effort to satisfy Pennsylvania's procedural requirements under Coffman, 361 A.2d at 654.

. Rivera challenged this detention via another successful state court petition for a writ of habeas corpus. Once he was granted habeas corpus relief, the Governor’s Warrant no longer provided a facially valid basis for detaining Rivera. As a result of the grant of habeas corpus relief, Rivera was discharged from the Montgomery County prison on September 20, 2006. Although he was immediately re-arrested in a nearby prison parking lot and detained on another criminal complaint charging him with being a fugitive from justice in Florida, Rivera does not challenge the September 20, 2006, detention that ultimately led to his extradition to Florida.